IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHNNY RAGLAND, # 111474, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05cv251-MEF |
| | ) | [WO] |
| | ) | |
| WARDEN STEVE WATSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Johnny Ragland ("Ragland"), a state inmate, complains that the defendants violated his constitutional rights during his confinement at the Alex City Work Release Center. Specifically, Ragland maintains that the defendants subjected him to a reclassification proceeding in violation of his rights to due process.[1] (*Compl.* at 3). Ragland names Steve Watson, Warden of Alex City Work Release Center, Terrance McDonald, Warden of Kilby Correctional Facility, Sergeant E.B. Turner, correctional officer George Smith, Roy Hightower, Regional Coordinator, Stephanie

---

[1] Ragland is adamant that he is not challenging the disciplinary proceedings that led to the reclassification hearing.

> Plaintiff shows that he is not filing his "Complaint" against said Defendant's (sic) concerning Plaintiff's Disciplinary, as said Disciplinary proved that your Plaintiff was "not guilty" of alleged threats made against Plaintiff's wife.
>
> For once, in the Alabama Department of Corrections the Prison Disciplinary worked as it should.
>
> Plaintiff is complaining about prior to and after Plaintiff's Disciplinary.

(*Pl's Res. to Defs' Report* at 2).

Atchinson, Classification Specialist Supervisor and Carolyn Golson, Assistant Classification Director, as defendants in this cause of action. Ragland seeks monetary damages, expungement of his records, reclassification to and restoration of community custody, and return to Alex City Work Release Center.

Pursuant to the orders of this court, the defendants filed special reports and supporting evidentiary materials addressing Ragland's claims for relief.[2] Ragland was provided an opportunity to respond to the motions and has done so. In accordance with the orders entered in this case, the court deems it appropriate to treat these reports as a motion for summary judgment. *See Order of April 21, 2005, doc. # 6.* Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of the motion, pleadings, responses and evidentiary material filed in support of and in opposition to the motion, the court concludes the defendants' motion for summary judgment is due to be granted.

## I.  FACTS[3]

Ragland was assigned to the Alex City Work Release and was employed at Tyson Chicken, Inc.[4] In addition, Ragland participated in a pass program in that he was sponsored by his wife and allowed to leave the Center for specific periods of time. On two occasions in June 2004, Ragland's wife telephoned Warden Watson to express her fear of Ragland.

---

[2] The defendants filed a second special report after the plaintiff added Carolyn Golson as a defendant in this action.

[3] The facts are gleaned from the complaint, the exhibits filed by Ragland in support of the complaint and amendment to the complaint, and the undisputed records in Ragland's inmate file.

[4] Ragland was transferred to Alex City Work Release Center on January 9, 2003.

Watson asked Mrs. Ragland to write a letter detailing Ragland's threats so that Watson could take appropriate action against Ragland. Ragland's wife did not write the requested letter.

On July 2, 2004, Mrs. Ragland called the Work Release Center and spoke to Officer Smith. At that time, she told Smith that Ragland had called and threatened to kill her because she told him she was filing for divorce. Mrs. Ragland also told Smith that Ragland had a key to her apartment and she feared for her life. As a result of this telephone call, when Ragland returned to the Center from his job he was placed in a secure holding cell, pending disciplinary charges for making threats.

Warden Watson spoke to Mrs. Ragland later in the day and again requested that she send a letter detailing Ragland's threats.[5] This time Mrs. Ragland did sent the letter which recounts the threats as follows:

> On 02 July 2004 Johnny called me from his place of employment around 5:40 a.m. I informed him that I would not be down to the camp to see him on the 4th of July, and I would not be picking him up on his passes. I told him I would appreciate it if he wouldn't call me anymore, because I am going to go ahead and file for divorce.
> He begin to tell me like so many other times that he wouldn't let anyone else have me and so that he would kill me. He also told me on another occasion that he would escape, because he had before, and he is always saying how he would take me away and noone would know. He said he won't have anything to live for, if I left him so killing me and spending the rest of his life in prison would not even face (sic) him. . . .

(*Defs' Special Rep., Ex. 2*, at 12-13).

As a result of Mrs. Ragland's telephone call, Smith charged Ragland with a violation

---

[5] The letter is dated and postmarked July 2, 2004. Watson received this letter on July 6, 2004.

3

of Rule # 44, threats. On July 7, 2004, Ragland was served with notice of the charge and the scheduled date for the disciplinary hearing. (*Id.* at 5.). Ragland acknowledged receipt of the notice and requested the presence of three witnesses at the disciplinary hearing. (*Id.*) Ragland was allowed to call his witnesses, and he submitted a written statement detailing his version of the facts surrounding the July 2, 2004 incident. *Id.* at 16.

At the conclusion of the disciplinary hearing, the hearing officer, defendant Turner, found Ragland not guilty as charged in the disciplinary report. Nonetheless, Ragland was referred for consideration of custody reclassification.[6] *Id.* On July 14, 2004, correctional officials transferred Ragland from the Alex City Work Release Center to Kilby Correctional Facility for review of his classification status.

On July 21, 2004, a classification specialist served Ragland with notice of pending reclassification informing him that

> On July 2, 2004, your wife, Vanance Ragland, wrote Warden Steve Watson, Alex City CBF, complaining that you would kill her. She stated that you made similar threats "many other times." She stated that you told her you would escape, as you had before, take her away, and "no one would know." Then, on July 7, 2004, your wife wrote Warden Watson asking him to overlook her letter. You were found not guilty of threats, in connection with this incident on or about 7-13-2004.
> You are being considered for custody increase based on your history of documented violence against women, coupled with this most recent incident. You will be considered for placement in SL IV, medium custody, at an appropriate facility.

(*Defs' Special Report, Ex. 4* at 5). The notice expressly informed Ragland that the pending

---

[6]This finding appears to be based on a second letter Mrs. Ragland wrote recanting her prior statements about threats made by her husband. All correctional officials believed that her fear of Ragland was the basis of this second letter.

4

reclassification concerned the incident with involving his wife. (*Id*.) The notice also identified the classification provision applicable to Ragland's reclassification and further advised Ragland that he would "be given an opportunity to be heard, to present witnesses and to present documentary evidence." *Id*. Ragland acknowledged receipt of this notice. After conducting the hearing, the classification hearing officer recommended that Ragland be removed from work release, and placed in medium custody at an appropriate institution. *Id*. at 7. On August 12, 2004, Ragland's appeal was denied as unappealable. (*Id*. at 9). The Central Review Board subsequently approved the recommendation to reclassify Ragland resulting in his removal from work release status. (*Special Report for Carolyn Golson*, *Ex.V*, at 10).

## II. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, Ragland is required to produce some evidence which would be admissible at trial supporting his claim of a constitutional violation. *See* FED. R. CIV. P. 56(e). Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d

912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving part, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to any material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence

such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Ragland has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III. DISCUSSION

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law."  Thus, the Constitution is implicated only if a person is deprived of an interest which is in some way protected by the Due Process Clause.  In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court abandoned its former methodology for determining the existence of a liberty interest.  Under that prior formulation a federal court ascertained whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion."  *Sandin*, 515 U.S. at 480.  In *Sandin*, the Court held that federal courts must instead look to the nature of the restraint imposed, rather than statutory or regulatory language, to determine if a liberty interest exists.

> Following *Wolff*,[7] we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. . . But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. at 483-484 (1995) (footnote added) (citations omitted). The Court specifically rejected the contention that any action taken by correctional officials as a punitive measure necessarily encroaches upon a liberty interest protected under the Due Process Clause. *Sandin*, 515 U.S. at 484.

Ragland complains that the defendants denied him due process in the reclassification proceedings related to the disciplinary charge and argues that his removal from work release occurred without requisite procedural protections.[8] Specifically, Ragland asserts that the defendants denied him due process in the reclassification action because correctional officials made the decision to reclassify him before issuing him a disciplinary, reclassifying him despite the "not guilty finding" relative to the disciplinary, and failing to notify him or conduct the reclassification hearing within the time required by administrative regulations.[9]

---

[7] *Wolff v. McDonnell*, 418 U.S. 539 (1974).

[8] Ragland maintains that even though he "scored a level I" placement, he was recommended for classification at the level IV level. *Pl's Res. to Defs' Special Report, Doc. #* 21 at 4.

[9] To the extent that Ragland's complaint can be construed as asserting a claim that Warden Watson, Warden McDonald, and Regional Coordinator Hightower are liable under a theory of respondeat superior, he is entitled to no relief on this basis. The law is well settled that a defendant cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of respondeat superior or on the basis of vicarious liability. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690-92 (1978); *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir. 1993).

To the extent Ragland complains his classification level is improper due to the defendants failure to follow the procedure outlined in administrative regulations, he is entitled to no relief.[10] An inmate confined in the Alabama prison system has no constitutionally protected interest in the procedures affecting a change in his classification level because any resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484. Because Ragland has no constitutionally protected interest in the level of his custody classification, correctional officials may assign him to any classification level without implicating the protections of due process. Consequently, the defendants are entitled to judgment as a matter of law on Ragland's claims regarding the classification proceedings and decision to reclassify him.

Ragland further asserts that correctional officials improperly transferred him from the Alexander City Work Release Center to the Kilby Correctional Center in violation of his due process rights. A convicted prisoner has no constitutionally protected right to confinement in a particular penal facility. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Thus, an inmate may be confined in any correctional facility without implicating the prisoner's constitutional rights. *Id.*; *see also Montanye v. Haymes*, 427 U.S. 236, 242 (1976). While more burdensome on an inmate, a transfer to a more secure facility is "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum*, 427

---

[10] The plaintiff's lengthy, rambling complaint has made it difficult for the court to ascertain the exact nature of the plaintiff's claims. Consequently, the court has attempted to decipher and address the issues raised by the plaintiff.

9

U.S. at 225; *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution). In general, "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed on him . . . the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460-461 (1989) (quoting *Montanye*, 427 U.S. at 242). Consequently, Ragland's transfer from a correctional facility of his liking to a more restrictive facility which he does not like does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action.

Ragland misguidedly asserts that he has a liberty interest in continued participation in a work release program and that he can not be removed from work release absent a due process hearing. However, the law is well settled that an inmate in the Alabama prison system has no liberty interest which entitles him to work release, *Francis v. Fox*, 838 F.2d 1147, 1149 (11th Cir. 1988), nor does the Due Process Clause itself create a constitutionally protected interest in work release. *Kitchen v. Upshaw*, 286 F.3d 179, 188 (4th Cir. 2002) (inmate denied permission to participate in work release has no constitutionally protected interest in work release because "it is clear that being denied permission to leave jail in order to work is nothing more than an ordinary experience of inmates."); *Codd v. Brown*, 949 F.2d, 879 (6th Cir. 1991) (prisoners have no inherent due process interest in work release). That said, the court must still determine whether Ragland's removal from work release and placement in a medium custody facility imposed on Ragland the type of "atypical, significant

deprivation" in which a state might create a liberty interest. *Sandin*, 515 U.S. at 486. The court finds that it did not.

"[T]he baseline for determining [restraints which constitute the requisite atypical and significant hardship] is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction . . ." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3rd Cir. 1997). "*Sandin* does not permit [a federal court] to compare the prisoner's own life before and after the alleged deprivation. Rather, [the court] must compare the prisoner's liberties after the alleged deprivation with the normal incidents of prison life. *See Sandin,* 515 U.S. at 485-86, 115 S.Ct. 2293. . . . Since an inmate is normally incarcerated in prison, [the plaintiff's] return to prison [from institutional confinement in a halfway house] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Dep't of Corrections*, 186 F.3d 407, 412 (3rd Cir. 1999). An inmate summarily removed from a work-release program for various penalogical reasons and transferred to a medium security prison after having successfully participated in work release for four years did not possess a protected liberty interest in remaining in work release because confinement within the prison walls of the medium security prison constituted "an 'ordinary incident of prison life.' It is not 'atypical.'" *Dominique v. Weld*, 73 F.3d 1156, 1160 (1st Cir. 1996); *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir. 1996) (return of an inmate to prison after revocation of his work release status imposed neither an atypical nor significant deprivation under *Sandin* because prison is "not atypical of what inmates have to endure in

11

daily prison life."). Ragland removal from work release and transfer him to a medium security facility did not impose "an atypical and significant hardship on [Ragland] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, Ragland did not possess a liberty interest in his continued participation in the work release program. Summary judgment is due to be granted in favor of the defendants and these claims.

Finally, Ragland alleges, in very general terms, that the defendants conspired against him, in violation of federal law, to deprive him of his constitutional rights. A conspiracy claim justifiably may be dismissed because of the conclusory, vague, and general nature of the allegations of a conspiracy. *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). The court has carefully reviewed the plaintiff's sworn responses in opposition to the motion for summary judgment. His description of the defendants' actions does not establish the existence of a conspiracy.[11] The plaintiff presents no material facts sufficient to establish a conspiracy existed between any of the defendants. More importantly, the plaintiff presents no evidence that the parties reached an agreement to violate his constitutional rights. *See Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988) ("To establish a prima facie case of conspiracy to violate rights protected by § 1983, a plaintiff must demonstrate that the defendants "'reached an understanding' to violate his rights."); *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" acts, without showing contacts between private person and state actors which could prove that these parties "reached an

---

[11] For example, the plaintiff argues that after he was found not guilty, "the only way that your Plaintiff can re-classified (sic) . . . is if the herein named defendants conspired together and/or acted in concert with one another to violate Plaintiff's established due process constitutional rights."

understanding" to violate plaintiff's rights, is insufficient to demonstrate the existence of a conspiracy). Thus, the court concludes that the plaintiff's bare allegations of a conspiracy are insufficient to support a claim for relief under 42 U.S.C. § 1983. *Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557. "It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman*, 739 F.2d at 557. Thus, the court concludes that the defendants' motions for summary judgment on the plaintiff's conspiracy claims are due to be granted.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendants' motion for summary judgment be granted, that judgment be entered in favor of the defendants and against the plaintiff, that this case be dismissed with prejudice, and that the costs of this proceeding be taxed against the plaintiff. It is further

ORDERED that on or before **April 25, 2007**, the parties may file objections to the Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 12th day of April, 2007.

      /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE